**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

**FILED**
**November 17, 2022**
**In the Office of the Clerk of Court**
**WA State Court of Appeals Division III**

COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No.   38050-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING MOTION |
| | ) |   TO PUBLISH OPINION |
| SANTIAGO AYALA-PINEDA, | ) | |
| | ) | |
| Respondent. | ) | |

THE COURT has considered the Respondent's motion to publish the court's

opinion of September 27, 2022, and the answers and reply thereto, and is of the opinion

the motion should be granted.  Therefore,

IT IS ORDERED, the motion to publish is granted.

PANEL:  Judges Siddoway, Fearing, Pennell

FOR THE COURT:

_____
LAUREL H. SIDDOWAY
Chief Judge

**FILED**
**SEPTEMBER 27, 2022**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38050-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SANTIAGO AYALA-PINEDA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, C.J. — The Franklin County Prosecuting Attorney's Office appeals a court order concluding that it willfully violated a discovery order in this matter and awarding attorney fees of $2,250 to Santiago Ayala-Pineda. Substantial evidence supports the trial court's findings of fact, which support, in turn, its conclusions of law. We affirm.

FACTS AND PROCEDURAL BACKGROUND

On December 10, 2019, relying on a lead that Kendra Ponce might have been involved in a drug-related shooting several hours earlier, Pasco police officers traveled to her last known address. On arrival, they saw Ms. Ponce driving away with Mr. Ayala-Pineda and Ms. Ponce's four-year-old son in the car. Ms. Ponce did not yield to a traffic stop and a high-speed chase ensued that ended when her car crashed. Police later learned that Mr. Ayala-Pineda threw a backpack from the car during the chase. The backpack

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38050-5-III
*State v. Ayala-Pineda*

was located and police obtained a search warrant and searched it. It contained controlled substances and firearms. Mr. Ayala-Pineda, a convicted felon, could not legally possess firearms.

Mr. Ayala-Pineda was charged with multiple counts of unlawful possession of a firearm, unlawful possession of a controlled substance with intent to deliver, and unlawful possession of a controlled substance. Ms. Ponce was charged with attempting to elude a pursuing police vehicle and reckless endangerment. In January 2020, the State moved to join Mr. Ayala-Pineda's case with that of Ms. Ponce.

The first omnibus hearing in Mr. Ayala-Pineda's case was held on January 28, 2020. The State's first witness list named 140 potential witnesses with their addresses.

In September 2020, the State filed an amended motion to join Mr. Ayala-Pineda's charges for trial, this time not only with the charges against Ms. Ponce but also with charges against Joshua Welch for the December 2019 shooting that had brought attention to Ms. Ponce in the first place. Mr. Welch was charged with attempted murder in the first degree, assault in the first degree, and firearm possession for the shooting.

In November 2020, the State filed its first amended witness list in Mr. Ayala-Pineda's case. Its list had grown to 223 witnesses, with many identified by name and address but others only identified by name alone. Neither the first list nor the amended list provided a summary of the anticipated testimony that would relate to Mr. Ayala-Pineda's charges.

2

No. 38050-5-III
*State v. Ayala-Pineda*

Mr. Ayala-Pineda's lawyer asked to interview all 223 witnesses. She began by interviewing police officers from the Pasco Police Department in early December 2020. When interviewed, lead detective Jesse Romero indicated that most of the 223 witnesses identified were not related to Mr. Ayala-Pineda's case. He identified a number who were tied to the shooting. While the State viewed Mr. Welch's and Mr. Ayala-Pineda's cases as related and maintained that Mr. Ayala-Pineda might face future charges for the shooting, the shooting victim had identified Mr. Welch as the shooter, telling officers that Mr. Ayala-Pineda helped to arrange the drug deal during which the shooting occurred but was not involved with the shooting.

On December 15, 2020, Mr. Ayala-Pineda moved for sanctions against the State. He argued the witness list was not well-grounded in fact or warranted by law and was instead filed to bury the defense in needless discovery. He argued that the over-inclusive witness list was needlessly increasing the cost of litigation and causing unnecessary delays to trial. Defense counsel expressed her belief that only 27 of the 223 witnesses were possibly relevant to Mr. Ayala-Pineda's case and sought a witness list narrowed to persons the State actually intended to be called against Mr. Ayala-Pineda for the existing charges.

The State argued in response that it was complying with its obligation to provide all potential witnesses to the defense for all potential charges Mr. Ayala-Pineda might face.

3

No. 38050-5-III
*State v. Ayala-Pineda*

The motion was heard by Judge Bruce Spanner on December 22, 2020. When

asked by Judge Spanner, the prosecutor confirmed that he did not intend to call as

witnesses at Mr. Ayala-Pineda's trial the witnesses to the homicide—the relevant

standard for disclosure under CrR 4.7. The judge characterized the State as "clearly in

violation of the Rule" and "imposing on [defense] counsel an unfathomable burden with

231 witnesses." Report of Proceedings (RP) at 5.[1] The judge added, "I know this comes

out of the Franklin County Prosecutor's Office way too much, and it needs to stop." *Id.*

He told the prosecutor he would order the State to "pare down your witness list to only

those that you intend to call" by next Tuesday. *Id.* He elaborated:

> For each witness, if there's a written or recorded statement, you're to
> provide that, even if you've done it once already. And then for all the other
> witnesses, if they've made oral statements to police or anybody else, you
> have to write out the substance of what those statements are. And the
> answer, if you put "See police reports," that won't be good enough.
>
> . . . .
>
> . . . I want a new list with witnesses you intend to call and for every
> such witness either a copy of the oral statement or for you to summarize
> any other oral statements those witnesses may have made to any person.
> And do not put there "See police reports." And it's due by next Tuesday.
> And to the extent you fail to comply with this directive today, you stand in
> grave—well, if I were the trial judge, I would exclude witnesses, because
> the 231 witnesses just is just beyond the pale, and it really put a burden on
> [defense counsel]. Now I'm not going to sanction you anymore than that,
> than require you to do all this work over the Christmas weekend. I think
> that's sufficient.

---

[1] All references to "RP" are to the verbatim report of the December 22, 2020
hearing before Judge Spanner.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38050-5-III
*State v. Ayala-Pineda*

*Id.* at 5-6. Judge Spanner then completed the following handwritten order:

> The State shall pare down their witness list to those it actually intends to call at trial by Tuesday, December 29, 2020 and provide recorded statements for each witness again. If there is no recorded statements then the State shall provide a written summary of the witnesses oral statements. The State shall not simply refer to the police reports, but shall provide a written summary.

Clerk's Papers (CP) at 168.

On the afternoon of December 29, the State filed a summary of the State's witnesses with the clerk of court. This time, the State identified only 44 witnesses and accompanied the list with a summary of the anticipated testimony, including excerpts from police reports or prior statements when necessary. It attached 155 pages of written discovery. Its certificate of service stated that "a copy of the foregoing was delivered to opposing counsel by placing it in Judicial Express Delivery, LLC, this 29 day of December, 2020." CP at 180.

On December 30, Mr. Ayala-Pineda moved for an order of contempt and renewed his request for sanctions, supported by an affidavit of defense counsel stating she had not received any of the production court ordered by Judge Spanner. Her explanation of her steps taken to confirm that nothing was received stated in part, "I called Judicial Express on December 29, 2020, at approximately 4:40 p.m. and verified they did not have any documents, thumb drives, [compact disks (CD's)/digital versatile disks (DVD's)] or anything from the State to me on this case." CP at 338.

5

No. 38050-5-III
*State v. Ayala-Pineda*

In response, the State took the position that it complied with Judge Spanner's order by filing and delivering the summaries with supporting documents to Judicial Express. It stated that it had provided CDs, DVDs, thumb drives, and Axon evidence[2] related to this case to the defense long before the December 22 hearing, listing its dates of its production.

In a supplemental affidavit, defense counsel stated that she received the summary of State's witnesses with attachments on December 31, 2020, and that "Judicial Express indicated that the above-mentioned documents were not available for pick up on December 29" but "were available for pick-up on December 30." CP at 376. She explained that since her office was closed, she arranged to obtain the materials on December 31.

Unsatisfied that Mr. Ayala-Pineda's submissions were sufficient for the court to determine whether a violation occurred, Judge Spanner recommended that Mr. Ayala-Pineda refile his motion with more complete support.

Mr. Ayala-Pineda's refiled motion was heard by Judge Jacqueline Shea-Brown. After hearing argument of counsel, delivering an initial ruling, and entertaining exceptions, Judge Shea-Brown granted the motion. She ordered further production by the

---

[2] Axon evidence is a program utilized by the State to send recordings and photographic evidence.

No. 38050-5-III
*State v. Ayala-Pineda*

State and awarded Mr. Ayala-Pineda $2,250 in attorney fees, reflecting defense counsel's work performed since December 22. The State appeals.

ANALYSIS

The State assigns error to three of the trial court's findings of fact and four of its conclusions of law. We review findings of fact under a substantial evidence standard. *Mitchell v. Wash. State Inst. of Pub. Pol'y*, 153 Wn. App. 803, 814, 225 P.3d 280 (2009) (quoting *Pardee v. Jolly*, 163 Wn.2d 558, 566, 182 P.3d 967 (2008)). "Substantial evidence is evidence that would persuade a fair-minded person of the truth of the statement asserted." *Cingular Wireless, LLC v. Thurston County*, 131 Wn. App. 756, 768, 129 P.3d 300 (2006). We review de novo questions of law and a trial court's conclusions of law. *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).

We address the challenged findings of fact and conclusions of law in turn.

*Challenged Finding of Fact 9 (CP at 762):*
*"The State did not provide defense counsel with the* Witness List & Discovery *by the court-ordered deadline of December 29, 2020."*

The State does not dispute that Judge Spanner's discovery order required it to provide the material required by December 29. It argues, however, that nothing in the order requires a "particular method" of providing the material. Appellant's Br. at 17.

The interpretation of a court order is a question of law, which we review de novo. *In re Marriage of Gimlett*, 95 Wn.2d 699, 704-05, 629 P.2d 450 (1981). If an order is

7

No. 38050-5-III
*State v. Ayala-Pineda*

unambiguous, we interpret it as written. *In re Marriage of Jess*, 136 Wn. App. 922, 926, 151 P.3d 240 (2007). To determine the ordinary meaning of an undefined term, Washington courts look to standard English language dictionaries. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 113 Wn.2d 869, 877, 784 P.2d 507 (1990). The ordinary meaning of "provide" is "**1 a :** to supply or make available (something wanted or needed) **b :** to make something available to." WEBSTER-MERRIAM ONLINE DICTIONARY (available at https://www.merriam-webster.com/dictionary/provide, last visited September 26, 2022). Material is not "made available" to a recipient when it is dispatched; it is made available when it is delivered and received.

Finding of fact 9 is supported by the record.

*Challenged Findings of Fact 14 and 15 (CP at 762) (boldface omitted):*
*"The State did not provide anew the recorded statements of the witnesses as ordered by Judge Spanner by December 29, 2020."*
*"The State's production to the defense of recorded interviews contained DVDs and/or CDs prior to December 22, 2020, is not relevant given the record by Judge Spanner as detailed in Exhibit A as well as the* Order *dated December 22, 2020. See Exhibit B."*

The relevant language of the discovery order is that "[t]he State shall pare down their witness list . . . and provide recorded statements for each witness again." CP at 168. The State argues that "[t]he order states nothing about providing duplicates of CDs and/or DVDs already provided" and "no purpose [was] served by providing defense counsel with CDs and/or DVDs which she already had." Appellant's Br. at 18.

8

No. 38050-5-III
*State v. Ayala-Pineda*

A purpose for the requirement to "provide recorded statements . . . again" might be to spare defense counsel the burden of sorting through excessive production earlier received in order to identify only recorded statements from the pared-down list of witnesses.

It does not matter whether a purpose was served by the requirement, however, because it is plain from the use of the word "again" that Judge Spanner intended for a second copy of any responsive "recorded statement" to be provided. In the context of criminal discovery, CDs and DVDs would fall into the category of recorded statements. *See* CrR 4.7(a)(1)(i) (requiring the prosecutor to disclose to the defendant "any written or recorded statements and the substance of any oral statements of . . . witnesses" expected to be called). Accordingly, while the State assigns error to the trial court's finding that the State's earlier production of CDs and DVDs was not relevant, the finding is correct: it was *not* relevant, given the terms of the discovery order.

Findings of fact 14 and 15 are supported by the record.

*Challenged Conclusion of Law 8 (CP at 764):*
*"The* Order *was clear in its terms as to the due date for compliance and that recorded statements were to be provided again. This was not done."*

Here, the State challenges the trial court's conclusion of law that the State did not comply with the order to provide again recorded statements of witnesses. The conclusion of law is supported by the trial court's findings of fact 14 and 15.

9

No. 38050-5-III
*State v. Ayala-Pineda*

> *Challenged Conclusion of Law 9 (CP at 764):*
>
> *"The State had the ability to comply, failed to do so and, given the totality of the circumstances, such failure was willful."*

The State challenges the conclusion of law that it willfully failed to comply with the December 22 order. It argues that a sanction for contempt "must be based on conduct that was at least 'tantamount to bad faith,'" and "a good faith disagreement as [to] the precise meaning of the court's order . . . will not suffice." Appellant's Br. at 13-14 (quoting *State v. Gassman*, 175 Wn.2d 208, 211, 283 P.3d 1113 (2012)).

As *Gassman* explains, various court rules allow the imposition of sanctions, including CrR 4.7(h)(7). In *Gassman*, "[n]o one argue[d] that the sanctions in this case were imposed under a statute or a rule or because of a violation of a court order"; rather, they were imposed under the court's inherent powers to sanction, where the court "'is at liberty to set the boundaries of the exercise of that power.'" *Id.* (quoting *In re Recall of Pearsall-Stipek*, 136 Wn.2d 255, 267 n.6, 961 P.2d 343 (1998)).

Mr. Ayala-Pineda's motion made rule-based arguments for sanctions, including under CR 11 and CrR 4.7. While Judge Shea-Brown did not identify the legal basis on which she relied, we find CrR 4.7(h) to be the most apt basis for analysis. CrR 4.7(h)(7)(i) provides:

> [I]f at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 38050-5-III
*State v. Ayala-Pineda*

>disclosed, grant a continuance, dismiss the action or enter such other order
>as it deems just under the circumstances.

The language grants the trial court discretion to impose sanctions as it sees fit, including those not specifically listed in the rule. *State v. Jones*, 33 Wn. App. 865, 869, 658 P.2d 1262 (1983). CrR 4.7(h)(7)(ii) also indicates that the "willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court."

In the present context—a party's violation of a court's discovery order—a violation is deemed "willful" if done "without reasonable excuse or justification." *Rivers v. Wash. State Conf. of Mason Contractors*, 145 Wn.2d 674, 686-87, 41 P.3d 1175 (2002) (citing *Woodhead v. Discount Waterbeds, Inc.*, 78 Wn. App. 125, 130, 896 P.2d 66 (1995)).

The State's only argument against a finding of willfulness is that it reasonably attempted to comply with what it believed the discovery order required. The trial court's conclusion of willfulness is supported by its findings that the order's language and intent were clear, however. It was also reasonable for the trial court to rely on its findings that Judge Spanner's statements at the December 22 hearing were clear. The State correctly points out that to the extent the trial court's oral ruling conflicts with its written order, the written order controls. But here, there was no inconsistency. And the record demonstrates that the same prosecutor who was present at the December 22 hearing and

11

No. 38050-5-III
*State v. Ayala-Pineda*

heard Judge Spanner's consistent and in some cases even more explicit directions[3]

participated in the State's attempted production one week later. What the prosecutor had

heard from the judge on December 22 is relevant to and supportive of the finding of

willfulness.

> The conclusion of law is supported by the trial court's findings of fact.
>
> *Challenged Conclusions of Law 10 and 12 (CP at 765):*
>
> *"Sanctions under CrR 4.7 are required to remedy the actions of the State and deter future abuses."*
>
> *"The Court awards attorney fees in the amount of $2250 payable by the Franklin County Prosecuting Attorney's Office to [defense counsel] within 60 days of today's date calculated as nine hours at $250/hour for work by defense counsel since December 22, 2020."*

The State challenges the trial court's conclusions of law that sanctions were

required and its conclusion awarding attorney fees as a sanction. The State's briefing

does not identify any bases for challenging the sanctions themselves, however. We note

that Mr. Ayala-Pineda had argued for the even harsher sanction of dismissal under

CrR 4.7 and 8.3(b), which the trial court refused to impose.

> The abuse of discretion standard governs review of sanctions for noncompliance with discovery orders. "[A] trial court has broad discretion as to the choice of sanctions for violation of a discovery order." "[D]iscretionary determination should not be disturbed on appeal except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."

---

[3] *E.g.*, Judge Spanner orally ruled, "By next Tuesday . . . [f]or each witness, if there's a written or recorded statement, you're to provide that, *even if you've done it once already*." RP at 5 (emphasis added).

12

No. 38050-5-III
*State v. Ayala-Pineda*

*Rivers*, 145 Wn.2d at 684-85 (alterations in original) (internal quotation marks and footnote omitted) (quoting *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997)).

The State does not demonstrate that the sanctions imposed were an abuse of discretion. Conclusions of law 10 and 12 are supported by the trial court's findings of fact.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Fearing, J.

_____
Pennell, J.

13